UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs*. | ) | 1:12-cv-00320-JMS-TAB |
| | ) | |
| PHILLIP F. SPERRY, | ) | |
|     *Defendant.* | ) | |

## ORDER

Presently pending before the Court are: (1) Plaintiff United States Department of Justice's (the "Government") Motion for Summary Judgment, [dkt. 17]; and (2) Defendant Phillip F. Sperry's Motion for Summary Judgment, [dkt. 20].

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on per-

sonal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial…against the moving party." *Celotex*, 477 U.S. at 330.

That cross-motions for summary judgment have been filed does not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the non-moving party with respect to each motion. *Id.* at 843.

After having assessed the claims of the parties in accordance with the standards outlined above, the Court concludes that the Government is entitled to summary judgment. Therefore, the

Court has made all reasonable factual inferences in favor of Mr. Sperry. *See Celotex*, 477 U.S. at 330 n.2.

## II.
### STATEMENT OF UNDISPUTED FACTS

In 1986, Mr. Sperry and his wife founded Monroe County Title Company. [Dkt. 17-1 at 6.] In 1991, Mr. Sperry and his wife changed the name of the company to MoCoTiCo and designated it as an "S" corporation. [*Id.*] Mr. and Mrs. Sperry were the sole owners of MoCoTiCo, until Mrs. Sperry's death in 2006 when Mr. Sperry became the sole owner. [*Id.* at 7-10.] Mr. Sperry handled payroll, made sure that bills were paid, ensured that the office was adequately stocked with supplies, and completed and filed all state and federal tax forms. [*Id.* at 9-10.]

### A. The 2008 Tax Year

In June 2008, MoCoTiCo was no longer able to fulfill its federal tax obligations. [*Id.* at 10.] It did not pay federal employment taxes for the June 2008 quarter, nor did it pay federal unemployment taxes for 2008. [*Id.*; dkt. 17-3.] During that time, however, MoCoTiCo – at Mr. Sperry's direction – continued to pay other creditors because Mr. Sperry "thought [he] could make up the money later on." [Dkt. 17-1 at 10-11.] One such creditor was Citibank, to whom MoCoTiCo paid $2,000 in 2008. [Dkt. 17-6.][1] Mr. Sperry testified that some but not all of the charges on the Citibank credit card that these payments corresponded with – which, as discussed below, also took place in 2009 – were for business expenses for MoCoTiCo. [Dkt. 17-1 at 23-37.] The remaining charges were for personal expenses or business expenses for other companies that Mr. Sperry owned. [*Id.*]

---

[1] Dkt. 17-6 indicates that an additional $500 payment was made to Citibank in 2008, for a total of $2,500. However, because the check for that payment could not be located, it was not included in the 2008 total.

- 3 -

Mr. Sperry signed MoCoTiCo's 2008 Form 1120S ("Corporate Tax Return"), which reflected that MoCoTiCo's liabilities exceeded its assets by $30,274.68. [Dkt. 17-4.] Mr. Sperry attached a document titled 2008 Expense and Revenue to MoCoTiCo's 2008 Corporate Tax Return, which detailed the $30,274.68 loss. [Dkt. 17-4 at 5-6.] The document further stated that MoCoTiCo's liabilities were $264,275.99, which was $62,808.36 greater than its assets of $201,467.64. [*Id.* at 6.] One of the liabilities listed was an "Owners' Loan" for $215,269.55. [*Id.*] The Owners' Loan included twenty-eight individual loans that Mr. Sperry made to MoCoTiCo from 2006 through 2008, and originally totaled $216,000. [Dkt. 17-9.] Mr. Sperry considered these to be loans, and hoped they would eventually be paid back. [Dkt. 17-1 at 54.]

### B. The 2009 Tax Year

MoCoTiCo did not pay federal employment tax or unemployment tax for 2009. [Dkts. 17-3; 17-11.] MoCoTiCo's 2009 Corporate Tax Return reflected a total income of $2,649.48 for that year, [dkt. 17-5 at 1], but the document attached to it and titled 2009 Expense and Revenue stated that MoCoTiCo's liabilities ($245,163.75) still exceeded its assets ($200,653.45) and still reflected the "Owners' Loan" of $215,269.55. [*Id.* at 6.] In 2009, MoCoTiCo, at Mr. Sperry's direction, paid Citibank $28,000. [Dkts. 17-1 at 37; 17-6.]

### C. The 2010 Tax Year

On January 4, 2010, Mr. Sperry wrote a check to himself from MoCoTiCo's operating account for $25,000, endorsed it, and deposited it in his personal bank account. [Dkts. 17-1 at 20-21; 17-8.] Mr. Sperry wrote "Temp Loan" in the space on the check labeled "for." [Dkt. 17-8.] He intended for the $25,000 check to be a partial repayment of the $216,000 Owners' Loan. [Dkt. 17-1 at 45.] MoCoTiCo made payroll for the final time in February 2010, and went out of business that same month. [*Id.* at 16; 17-7 at 2.]

### D. The 2011 Tax Lien

On February 18, 2011, the Government filed a Federal Tax Lien against MoCoTiCo in the amount of $68,641.98, which listed the "Kind of Tax" as "6672." [Dkt. 20-2 at 4.] Later that year, Mr. Sperry paid the Government $68,641.98 in satisfaction of this Federal Tax Lien, plus interest which had accrued. [Dkts. 19-2 at 3; 20-3.]

### E. MoCoTiCo's Current Outstanding Tax Liability

The Government claims that MoCoTiCo's federal tax liabilities as of February 1, 2013 total $101,363.93, with $62,656.88 of that amount being taxes assessed against the corporation as non-trust fund taxes. [Dkts. 26 at 3-4; 26-2.] Mr. Sperry does not dispute that MoCoTiCo owed $62,656.88 in non-trust fund taxes as of February 1, 2013, but rather only disputes that he can be held personally liable for them. [*See* dkts. 19-1; 19-2; 20-1; 28; 28-1; 29; 31.] Accordingly, the Court accepts the $62,656.99 figure as the amount of non-trust fund taxes that MoCoTiCo owed as of February 1, 2013 for purposes of the pending motions.

### F. The Complaint

In this action, the Government seeks $55,000 from Mr. Sperry under 31 U.S.C. § 3713, which is the total amount it alleges he caused MoCoTiCo to pay to Citibank ($30,000) and himself ($25,000) while MoCoTiCo was insolvent. [Dkt. 1 at 5.]

## III.
### DISCUSSION

### A. Whether the Taxes at Issue Here Have Already Been Paid

In support of his Motion for Summary Judgment, Mr. Sperry argues that he has already paid the taxes at issue in this case. Specifically, he argues that on February 18, 2011, a Notice of Federal Tax Lien was filed against him personally for "trust fund taxes for [MoCoTiCo] wage taxes," which were imposed against him personally under Internal Revenue Code ("IRC") §

- 5 -

6672. [Dkt. 20-1 at 1-2.] He asserts that he then sold a commercial building, so was able to use the proceeds of that sale to pay the $68,641.98 in outstanding taxes that were the subject of the Federal Tax Lien and some accrued interest. [*Id.* at 2.] He argues that he received a Certificate of Release of Federal Tax Lien for $68,641.98, which was "proof of his payment of all of his personal trust fund tax obligations due in connection with [MoCoTiCo's] taxes which are the subject of this case." [*Id.*] Accordingly, Mr. Sperry claims that the Government is bound by the Certificate of Release and has no further claims against him. [*Id.* at 3.]

The Government responds that the taxes Mr. Sperry has already paid were for the trust fund portion of MoCoTiCo's federal tax liability, for which he was personally liable under 26 U.S.C. § 6672. [Dkt. 26 at 1-4.] The Government seeks to clarify that the taxes at issue here are for the non-trust fund portion of MoCoTiCo's federal tax liabilities, [*id.*], and the Certificate of Release does not apply to those taxes, [*id.* at 4].

On reply, Mr. Sperry focuses on his argument that he cannot be personally liable for MoCoTiCo's non-trust fund taxes because Internal Revenue Service ("<u>IRS</u>") Agent Phil Ketring informed him "on multiple occasions that Mr. Sperry's personal obligation to pay on MoCoTiCo wage taxes was limited to the trust fund tax liability imposed under 26 U.S.C. 6672," that he paid all of MoCoTiCo's Section 6672 trust fund taxes, and that the Government is bound by Mr. Ketring's statements and cannot now seek additional payment of MoCoTiCo taxes from him. [Dkt. 29 at 2-3.]

    *1. Trust Fund Taxes*

The IRC "requires employers to withhold employees' income tax and Social Security contribution from each employee's paycheck….Employers hold these taxes in trust for the federal government…, and they are commonly called 'trust fund taxes.'" *Gessert v. United States*,

703 F.3d 1028, 1031 (7th Cir. 2013) (*citing* 26 U.S.C. § 3402(a), 3102(a), and 7501(a)).  When individuals responsible for collecting and paying over trust fund taxes "willfully fail[] to collect such tax, or truthfully account for and pay over such tax, or willfully attempt[] in any manner to evade or defeat any such tax or the payment thereof," they can be assessed a "trust fund recovery penalty" equal to the amount of the trust fund taxes not collected.  26 U.S.C. § 6672(a); *Gessert*, 703 F.3d at 1031.  The undisputed record indicates that the $68,641.98 amount Mr. Sperry paid to the Government was for trust fund taxes under § 6672.  Indeed, the Certificate of Release states that each of the tax assessments for which Mr. Sperry was released were "6672" – or trust fund – taxes.  [Dkt. 20-3.]

### 2. *Non-Trust Fund Taxes*

Non-trust fund taxes are "taxes that are not collected from employees' wages, such as an employer's share of Social Security taxes."  *Diamond Plating Co. v. United States*, 390 F.3d 1035, 1038 (7th Cir. 2004).  An individual can be personally liable where non-trust fund taxes are owed to the Government, and the individual causes an insolvent corporation to commit an "act of bankruptcy."  31 U.S.C. § 3713.  In that situation – which the Government alleges occurred here – the individual is liable for the amount wrongfully paid to other creditors during the time the company was insolvent.  *Id.*  Mr. Sperry does not claim that he has paid any non-trust fund taxes on behalf of MoCoTiCo, or that MoCoTiCo does not owe the non-trust fund taxes the Government claims it owes.  Rather, he argues that this action only relates to the taxes he has already paid (the trust fund taxes), and that he cannot be personally liable for non-trust fund taxes in any event.

The Court finds that the taxes at issue in this case are non-trust fund taxes owed by MoCoTiCo, and that the $68,641.98 paid by Mr. Sperry – and to which the Certificate of Release

applies – were for trust fund taxes. Accordingly, Mr. Sperry has not already paid the taxes at issue here. The Court will go on to consider whether Mr. Ketring's alleged representations to Mr. Sperry somehow preclude Mr. Sperry's personal liability for the non-trust fund taxes and, if not, whether Mr. Sperry is, in fact, liable based on MoCoTiCo's payments to Citibank and himself.

### B. Mr. Ketring's Statements

Mr. Sperry argues that Mr. Ketring told him on several occasions that his personal liability would be limited to the $68,641.98 he paid toward MoCoTiCo's taxes, and that the Government is now estopped from trying to collect any additional amount from Mr. Sperry personally. [*See, e.g.*, dkt. 28-1 at 2-3.] "[T]he Government may not be estopped on the same terms as any other litigant," because "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Community Health Servs.*, 467 U.S. 51, 60-63 (1984). In order for the Government to be bound by a statement of an agent, "the alleged estopping statements must be in writing and must be made by officials at a policy-making level." *United States v. Huebner*, 752 F.2d 1235, 1244 (7th Cir. 1985) (*citing Heckler*, 467 U.S. at 65-66, and *City of Alexandria v. United States*, 737 F.2d 1022, 1028 (Fed. Cir. 1984)). Mr. Sperry has not provided any written communications from Mr. Ketring indicating that Mr. Sperry's personal liability related to MoCoTiCo's federal taxes would be limited to the $68,641.98 payment he made for the trust fund taxes, nor has he argued that Mr.

Ketring holds a "policy-making level" position at the IRS. Accordingly, the Government is not bound by any statements Mr. Ketring may or may not have made.[2]

Further, the statements that Mr. Sperry claims Mr. Ketring made are not inconsistent with the Government's current pursuit of Mr. Sperry for the amounts paid to Citibank and himself. According to Mr. Sperry, Mr. Ketring told him that Mr. Sperry's "personal obligations in connection with MoCoTiCo wage taxes were limited to the 26 U.S.C. § 6672 trust fund obligations" that Mr. Sperry ultimately paid. [Dkt. 29 at 2.] As discussed above, the Government seeks payment related to non-trust fund taxes through this lawsuit – not the "wage taxes" to which Mr. Ketring allegedly referred.

### C. Whether Mr. Sperry Is Personally Liable For the Non-Trust Fund Taxes

Having concluded that the Government seeks payment related to non-trust fund taxes – which Mr. Sperry has not paid – and that the Government is not estopped from seeking those taxes from him in his personal capacity, the Court will consider whether he is, in fact, liable in connection with those taxes. In support of its Motion for Summary Judgment, the Government argues that Mr. Sperry is personally liable for the amounts MoCoTiCo paid to Citibank and Mr. Sperry because Mr. Sperry, as a representative of MoCoTiCo in charge of its finances, was responsible for MoCoTiCo committing an "act of bankruptcy" by paying other creditors before paying the federal tax liability when MoCoTiCo was insolvent. [Dkt. 18 at 6-14.]

Mr. Sperry responds that the definition of "act of bankruptcy" upon which the Government relies is not defined in 31 U.S.C. § 3713, which gives the Government priority over other creditors. [Dkt. 19-1 at 2.] He also asserts that any payments to Citibank were for MoCoTiCo

---

[2] Mr. Sperry submits written notes which he represents are from meetings with Mr. Ketring, [dkts. 28-3; 28-5], and the Government argues that the notes are inadmissible hearsay, [dkt. 36 at 2-3]. Because the Court has found that Mr. Ketring's statements would not bind the Government in any event, it need not determine whether the notes would be admissible on that issue.

business expenses, and relies upon the Affidavit of Michael E. Sallee, CPA ("Sallee Affidavit") to argue that MoCoTiCo was not insolvent in 2008 or 2009 when it paid other creditors. [*Id.* at 3; *see also* dkt. 19-3.] Mr. Sperry does concede, however, that "the $25,000 payment to himself on or about January 4, 2010, was an improper payment under Indiana law…." [Dkt. 19-1 at 3.]

The Government replies by requesting that the Court strike the Sallee Affidavit because Mr. Sperry did not disclose Mr. Sallee as a potential witness in his initial disclosures, did not supplement those disclosures, and stated in the Case Management Plan that he did not "anticipate the need for expert witness discovery." [Dkt. 27 at 1.] Further, the Government argues that the Sallee Affidavit does not indicate that MoCoTiCo was solvent in 2008 and 2009, [*id.* at 3-6], and that it is irrelevant whether the Citibank payments were for personal or business charges, [*id.* at 6-7]. Finally, the Government argues that, due to Mr. Sperry's concession that the $25,000 payment he directed MoCoTiCo to make to him was improper, the Government is entitled to that $25,000 amount at the very least. [*Id.* at 7.] Mr. Sperry then focuses on his argument that MoCoTiCo was not insolvent, stating that he has filed an amended Corporate Tax Return for 2009 on behalf of MoCoTiCo, which reflects that MoCoTiCo's assets exceeded their liabilities. [Dkt. 31 at 2.][3] The Court will consider the parties' arguments in turn.

*1. Was MoCoTiCo Insolvent?*

31 U.S.C. § 3713 provides that:

(a)(1) A claim of the United States Government shall be paid first when –

    (A) a person indebted to the Government is insolvent and –
                   \*      \*      \*
        (iii) an act of bankruptcy is committed….

---

[3] The Government requests that the Court strike dkt. 31 because Mr. Sperry did not request leave to file a surreply. [Dkt. 36 at 1-2.] Because the Court granted the Government's motion for Leave to File Brief in Response to Docket Nos. 28 Through 31, [dkt. 35], which related to the Government's own surreply, it will also consider Mr. Sperry's surreply.

> (b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

While Section 3713 does not define "act of bankruptcy," courts have used the definition from the Bankruptcy Act of 1898 to interpret its meaning within the context of Section 3713. *See, e.g., United States v. Crosswinds Ptnrs., L.P.*, 2000 U.S. Dist. LEXIS 22561, *35 (E.D. Mo. 2000); *United States v. Golden Acres, Inc.*, 684 F.Supp. 96, 101 (D. Del. 1988). Section 3 of the Bankruptcy Code of 1898 provides that "[a]cts of bankruptcy by a person shall consist of his having…(2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors…." *Wilson v. Nelson*, 183 U.S. 191, 194-95 (1901) (*quoting* Bankruptcy Act of 1898, § 3). When a company is insolvent and "payments were made to creditors other than the United States in derogation of its claim for federal employment taxes [owed] to the government," an act of bankruptcy within the meaning of 31 U.S.C. § 3713 has occurred. *United States v. Whitney*, 654 F.2d 607, 610 (9th Cir. 1981).

The parties do not appear to dispute the fact that Mr. Sperry was the person making the financial decisions for MoCoTiCo, that he directed payments to Citibank and himself, and that he knew MoCoTiCo owed federal taxes when he directed those payments. The sole question is whether MoCoTiCo was insolvent in 2008, 2009, and 2010, when those payments were made. If MoCoTiCo was insolvent, then Mr. Sperry is personally liable for the amount he caused MoCoTiCo to pay to Citibank and himself because he committed an "act of bankruptcy" by paying creditors other than the Government while the company was insolvent.

Courts have looked to the definition of insolvency under the predecessor to Section 3713 to determine whether a corporation was insolvent for purposes of Section 3713. Insolvency un-

der the predecessor of Section 3713 was defined as "where a debtor's assets exceed his liabilities and where his property is insufficient to pay all his debts." *FTC v. Crittenden*, 823 F.Supp. 705, 708 (C.D. Cal. 1993) (*citing Lakeshore Apartments, Inc. v. United States*, 351 F.2d 349 (9th Cir. 1965); *United States v. Oklahoma*, 261 U.S. 253 (1923)).

Mr. Sperry initially relies upon the Sallee Affidavit in an attempt to show that the Owners' Loan was really a MoCoTiCo asset not a liability and, thus, MoCoTiCo was solvent. The Court agrees with the Government that the Sallee Affidavit should be stricken. Federal Rule of Civil Procedure 26(a)(2)(A) requires that a party "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Mr. Sperry did not disclose Mr. Sallee as a potential witness in his Initial Disclosures, which his counsel represented were identical to the Government's disclosures in all relevant respects, [dkt. 27-1 at 1-3]. Mr. Sperry does not argue in response to the Government's request that the Sallee Affidavit be stricken that he supplemented those Disclosures at any time. Additionally, Mr. Sperry stated in the parties' Case Management Plan that he "[did] not anticipate the need for expert witness discovery." [Dkt. 11 at 2.]

When a party fails to identify a witness, that party cannot use "that information or witness to supply evidence on a motion…unless the failure was substantially justified or is harmless…." Fed. R. Civ. P 37(c)(1). *See also Hale v. Gannon*, 2012 U.S. Dist. LEXIS 129002, *2 (S.D. Ind. 2012) ("The exclusion of non-disclosed evidence is automatic and mandatory unless the failure was substantially justified or harmless"). Mr. Sperry does not advance any arguments regarding why he did not disclose Mr. Sallee as a witness and, indeed, does not address the Government's request that the Sallee Affidavit be stricken at all. [*See* dkt. 31.] Accordingly, because Mr. Sperry did not disclose Mr. Sallee as a potential witness, he cannot now rely upon the Sallee Affida-

vit in opposing the Government's Motion for Summary Judgment or in supporting his own Motion for Summary Judgment.

In any event, the Sallee Affidavit does not refute the fact that MoCoTiCo was insolvent when Mr. Sperry directed payments to Citibank and himself in 2008, 2009, and 2010. Mr. Sperry relies upon the Sallee Affidavit for the proposition that the Owners' Loan to MoCoTiCo was really an equity contribution – which should have been listed as an asset – rather than a loan, or liability. But Mr. Sperry himself listed the Owners' Loan as a liability on MoCoTiCo's 2008 and 2009 Corporate Tax Returns, [*see* dkts. 17-4 at 6; 17-5 at 6]. He also included the Owners' Loan on a sheet submitted to the IRS and titled "Accounting of Loans to MoCoTiCo – The Title Company from Phillip F. Sperry," [dkt. 17-9], characterized the $25,000 payment to himself as a "Temp Loan," [dkt. 17-8], and testified that he considered the Owners' Loan to be a loan to MoCoTiCo for which he hoped to be repaid. [Dkt. 17-1 at 44-45, 56.] The Court rejects Mr. Sperry's attempt to re-characterize the nature of the Owners' Loan when that re-characterization directly contradicts Mr. Sperry's representations to the IRS in MoCoTiCo's Corporate Tax Returns and his deposition testimony.

Further, the Court rejects Mr. Sperry's attempt to show that MoCoTiCo was solvent by filing an amended 2009 Corporate Tax Return. Mr. Sperry provides no explanation whatsoever for why he has changed the amounts listed in the amended version from the amounts listed in the original 2009 Corporate Tax Return. The amended 2009 Corporate Tax Return, which contradicts the original 2009 Corporate Tax Return signed by Mr. Sperry under penalty of perjury,

cannot be used to create a genuine issue of material fact to defeat summary judgment.[4]  *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985) (party cannot create a sham issue of fact by "directly contradict[ing] [his] own earlier statements, without explaining the contradiction or attempting to resolve the disparity").

Based on MoCoTiCo's 2008 and 2009 Corporate Tax Returns, and on its Corporate Tax Return for the first quarter of 2010, the Court finds that MoCoTiCo was insolvent during those time period – its liabilities exceeded its assets.  Accordingly, because it is undisputed that Mr. Sperry was in charge of MoCoTiCo's finances and caused payments to be made to Citibank in the amount of $30,000, [dkt. 17-6],[5] and to himself in the amount of $25,000, [dkts. 17-8; 19-1 at 3], during the time period that MoCoTiCo was insolvent, Mr. Sperry is personally liable for the $55,000 amount wrongfully paid to Citibank and himself during that time.  31 U.S.C. § 3713(b).

### IV.
#### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's Motion for Summary Judgment, [dkt. 17], and **DENIES** Mr. Sperry's Motion for Summary Judgment, [dkt. 20]. Judgment will enter accordingly.

04/24/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[4] The Court also notes that Mr. Sperry did not file the amended 2009 Corporate Tax Return until the day he filed his reply brief in support of his Motion for Summary Judgment and his surreply brief in opposition to the Government's Motion for Summary Judgment.  [See dkts. 28-2; 29; 31.]

[5] Mr. Sperry argues that the charges associated with the Citibank card were primarily for MoCoTiCo business expenses. [*See, e.g.*, dkt. 19-2 at 2.]  The Court finds that whether the charges were for MoCoTiCo's business expenses, for Mr. Sperry's personal expenses, or for expenses related to Mr. Sperry's other businesses is irrelevant.  Mr. Sperry authorized MoCoTiCo to pay for those charges in contravention of 31 U.S.C. § 3713 – the legitimacy of those charges does not matter.

- 15 -

**Distribution via ECF only:**

Laura C. Beckerman
U.S. DEPARTMENT OF JUSTICE, TAX DIVISION
laura.c.beckerman@usdoj.gov

Craig Rogers Benson
Craig Benson, Attorney at Law PC
craigbensonlaw@gmail.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov